UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

MAXINE RUSSELL

                    Plaintiff,

        v.                              Civ. No. 17-313 (EGS)

CORRECTIONS CORPORATION OF AMERICA,
THE DISTRICT OF COLUMBIA

                    Defendants.


                    **MEMORANDUM OPINION**

    Plaintiff Maxine Russell brings this suit against Corrections Corporation of America ("CCA") and the District of Columbia ("the District") seeking compensation for alleged injuries she suffered when she was a pretrial inmate at the Correctional Treatment Facility ("CTF") after she fell in her dark cell. She has since been released, and brings several claims against the defendants alleging violations of state and federal law in a seven-count complaint.

    The Court previously dismissed one count of her complaint. Pending before the Court is defendants' motion for summary judgment on the remaining six counts. Ms. Russell has failed to oppose the motion or file any response. Upon consideration of the motion, the relevant case law, and the entire record, the Court **GRANTS** defendants' motion for summary judgment.

## I. Background

The following facts are undisputed. Ms. Maxine Russell was incarcerated at the Correctional Treatment Facility ("CTF"), a correctional facility then-operated by Corrections Corporation of America[1] in Washington, D.C. pursuant to a correctional services agreement with the District. Defs.' Statement of Facts ("SOF"), ECF No. 64-1 at ¶ 1–3.[2] Ms. Russell was at CTF from January 28, 2014 through March 4, 2014. *Id.* ¶ 1.

At CTF, Ms. Russell was in Unit E-2-A, Cell #9 from January 28 until February 20, 2014, the date of her accident. *Id.* ¶¶ 1, 5. This cell was equipped with one set of bunk beds, one light fixture on the ceiling equipped with two bulbs, and a light switch that inmates could control. *Id.* ¶ 6. The light switch was located near the door of the cell, which was out of the reach of the bunk beds. *Id.* ¶ 8. The cell had two windows that allowed light from the outside, and one window in the cell door that allowed in light from the hallway so that security personnel could see into the cell to conduct security checks at night. *Id.* ¶¶ 12-14. Security lights and parking lot lights illuminated the cell at night, as well as 24-hour lighting from the hallway and dayroom. *Id.* ¶ 15.

---

[1] Corrections Corporation of America has since changed its name to CoreCivic.
[2] Ms. Russell has failed to dispute the defendants' statement of facts, or any of the documents provided to support those facts.

Ms. Russell alleges that shortly after she was incarcerated, the light bulb in her cell began to flicker. *Id.* ¶ 20. Sometime thereafter, the light stopped working. Compl., ECF No. 1-1 ¶ 10. Additionally, she claims that her windows were covered with film. SOF, ECF No. 64-1 ¶ 19. Ms. Russell claims she told CTF staff about the lighting problem, and they said that it would be fixed. *Id.* ¶ 21. On February 13, 2014, a week prior to the accident, a CTF employee submitted a work order to fix the lightbulb. *Id.* ¶ 22.

On February 20, 2014, Ms. Russell was seen by a Unity Health provider in the medical unit for reasons independent of her accident which would happen later in the day. *Id.* ¶ 23. There, she stated she could not sleep in the dark and that being "locked up" was "getting to her." *Id.* Ms. Russell also stated she was suffering emotional distress from the recent death of a close family member. *Id.* Ms. Russell returned to her cell from the medical unit at approximately 9:10 p.m. *Id.* ¶ 24. At approximately 10:45 p.m., the inmates were told to return to their cells from the dayroom and the TV room for a formal count, which was conducted at 11:00 p.m. *Id.* ¶¶ 25-26. The housing unit officer completed the count by 11:12 p.m. *Id.* ¶ 27.

At 11:24 p.m., the housing unit officer was notified that Ms. Russell needed medical assistance because she fell from her

top bunk and hit her head and back on the wall. *Id.* ¶ 28-29.[3] The housing unit officer medical staff responded and entered the unit at approximately 11:38 p.m. *Id.* ¶ 30. Medical staff and security personnel then escorted Ms. Russell to the medical unit. *Id.* ¶ 31. Unity Health provider notes indicate she was able to move and walk with minimal assistance. *Id.* ¶ 32. Ms. Russell was returned to her unit and transferred to the bottom bunk of a different cell at 1:50 a.m. on February 21, 2014. *Id.* ¶ 33. Ms. Russell visited the medical unit for follow-up visits seven more times before being released from CTF on March 4, 2014. *Id.* ¶ 34.

Ms. Russell filed her complaint against defendants alleging that she suffered physical and emotional injuries resulting from being kept in a small, dark, and dingy cell. *See* Compl., ECF No. 1 ¶¶ 11-12. Defendants moved to dismiss Count Seven, a *Monell* claim for municipal liability based on several theories of liability, which the Court granted on June 17, 2019. *See* Mem. Op., ECF No. 62. Six claims now remain against defendants: Negligence (Count One); Intentional Infliction of Emotional Distress ("IIED") (Count Two); Negligent Infliction of Emotional

---

[3] In her Complaint, Ms. Russell claims she tripped and fell in her cell. Compl., ECF No. 1-1 ¶ 12. However, in her deposition, she stated that she slipped off of the ladder while climbing to her bed, but does not remember exactly how she fell. SOF, ECF No. 64-1 ¶ 35.

4

Distress (Count Three); Negligent Training or Supervision (Count Four); Failure to Protect (Count Five); and Inadequate Medical Care (Count Six). *See generally* Compl., ECF No. 1.

Defendants have moved for summary judgment on all remaining counts in Ms. Russell's complaint. *See generally* Defs.' Mot. for Summ. J., ECF No. 64. Ms. Russell has failed to oppose, or in any way respond to, defendants' motion for summary judgment. Subsequently, defendants filed a motion for summary disposition. Defs.' Mot. for Summ. Disposition, ECF No. 66. Ms. Russell did not oppose or respond to the motion for summary disposition. Defendants' motions are ripe for adjudication.

**II. Legal Standard**

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact." *Carter v. Greenspan*, 304 F. Supp. 2d 13, 20 (D.D.C. 2004). Indeed, "[a] moving party is 'entitled to judgment as a matter of law' against 'a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Waterhouse v. District of*

5

*Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986)). The non-moving party is required to provide evidence that would permit a reasonable jury to find in its favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

Even when there is no opposition filed, the burden is always on the movant to demonstrate why summary judgment is warranted. *Grimes v. D.C.*, 794 F.3d 83, 97 (D.C. Cir. 2015). "If a party . . . fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Accordingly, a "district court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Grimes*, 794 F.3d at 97.

**III. Analysis**

In Ms. Russell's complaint she alleges violations of various state and federal laws. *See generally* Compl., ECF No. 1-1. The Court discusses each count in turn.

**A. Tort Law Claims**

**1. Count One: Negligence**

Ms. Russell alleges that defendants were negligent because they "knew or ought to have known that keeping an inmate in a

dark and dingy cell . . . could lead to severe mental and/or physical injuries." Compl., ECF No. 1-1 ¶ 15. She also alleges that as "a direct and proximate consequence of the negligence of the defendants, directly or indirectly [,she] sustained injuries." *Id.* ¶ 16. A plaintiff bringing a negligence claim must establish: (1) the standard of care; and (2) that a violation of the standard was the proximate cause of the injury. *Jones v. Safeway Stores, Inc.*, 314 A.2d 459, 460 (D.C. 1974). Furthermore, "[i]n the District of Columbia, in order to make out a *prima facie* case of liability based on the existence of a dangerous condition, a plaintiff must show that the defendant 'had actual notice of the dangerous condition or that the condition had existed for such length of time that, in the exercise of reasonable care, its existence should have become known and corrected.'" *Hickey v. WMATA*, 360 F. Supp. 2d 60, 62 (D.D.C. 2004).

Under District of Columbia law, expert testimony is generally required to prove a deviation occurred from the applicable standard of care in a negligence action. *Edwards v. Okie Dokie, Inc.*, 473 F. Supp. 2d 31, 45 (D.D.C. 2007). If "the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson," the plaintiff must present expert testimony to establish the applicable standard of care. *Id.* When expert

7

testimony is necessary to establish such a standard, a plaintiff's failure to name an expert constitutes grounds for dismissal. *Id.*

Ms. Russell has not established that the defendants had a duty to change the flickering light in her cell because they were on notice it was a dangerous condition and failed to remedy it in a reasonable time. *See id.* The evidence in the record establishes that a week before Ms. Russell fell, a CTF employee submitted a work order to fix a light bulb in her cell. SOF, ECF No. 64-1 ¶ 22. Ms. Russell has not provided expert testimony establishing that a week was not a reasonable time for prison maintenance to be completed under the circumstances in this case. The reasonable amount of time that prison maintenance employees should complete certain tasks, like replacing a flickering light bulb in a cell that has other sources of light, is a subject distinctly related to the correction profession such that it would require correctional expert testimony. *Cosio v. D.C.*, 940 A.2d 1009, 1010 (D.C. 2008)(stating that matters such as "appropriate inspection and maintenance schedules for prison facilities" would require expert testimony to establish the standard of care).

Similarly, Ms. Russell failed to provide expert testimony to show that the flickering light was a dangerous condition. The undisputed evidence shows that there were other light sources

that illuminated the cell. SOF, ECF No. 64-1 ¶ 15 (stating cell was lit by lights in parking lot and lights in hallway). The amount of light needed to safely move through a prison cell at night, when the cell has other sources of light, is also outside of the ken of a regular person, and therefore expert testimony is required to demonstrate that the lighting in Ms. Russell's cell fell below the standard of care. *See Briggs v. WMATA*, 481 F.3d 839, 845-46 (D.C. Cir. 2007)( stating that although "lay persons can certainly distinguish between illumination and complete darkness, there is nothing to indicate that common knowledge includes a universal standard of 'adequate' lighting"). Without expert testimony, there is insufficient evidence to prove that a deviation from the applicable standard of care occurred in this case. Therefore, Ms. Russell cannot establish that defendants breached a duty owed to her. Accordingly, defendants' motion for summary judgment on Count One is **GRANTED**.

### 2. Count Two: IIED

Ms. Russell alleges that defendants intentionally inflicted emotional distress on her, arguing defendants' "conduct was extreme, outrageous, and contrary to basic concepts of human decency." Compl., ECF No. 1-1 ¶ 18. To maintain a cause of action for IIED, District of Columbia law "requires the plaintiff to show (1) extreme and outrageous conduct by the

defendant which (2) intentionally or recklessly (3) cause[d] the plaintiff severe emotional distress." *Ben-Kotel v. Howard Univ.*, 156 F. Supp. 2d 8, 14 (D.D.C. 2001)(quotations and citations omitted). "Liability will be imposed only for conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Thompson v. Jasas Corp.*, 212 F. Supp. 2d 21, 27-28 (D.D.C. 2002)(citing *Homan v. Goyal*, 711 A. 2d 812, 818 (D.C. 1998))(internal quotation marks omitted).

The conduct alleged by Ms. Russell does not rise to the level of "atrocious, and utterly intolerable in a civilized community." *Id.* The undisputed evidence shows that a work order for the light bulb was placed after she complained about the lighting issues in her cell. SOF, ECF No-64-1 ¶ 22. Moreover, after she fell, Ms. Russell was seen by medical staff at least seven times, *id.* ¶ 34, and she has not provided any evidence that an employee engaged in any behavior that could be classified as extreme. The defendants' actions in this case "[do] not approach the high extreme and outrageous" conduct required to support an IIED claim. *See Hollis v. Rosa Mexicano DC, LLC*, 582 F. Supp. 2d 22, 23 (D.D.C. 2008). Accordingly, defendants' motion for summary judgment on Count Two is **GRANTED**.

### 3. Count Three: Negligent Infliction of Emotional Distress

Ms. Russell alleges that defendants negligently inflicted emotional distress on her, arguing that their "conduct was grossly negligent and defendants ought to know or knew that such conduct would provoke extreme emotional distress." Compl., ECF No. 1-1 ¶ 23. To prevail on a claim of negligent infliction of emotional distress, a plaintiff must establish, among other things, that defendants acted negligently. *Wright v. U.S.*, 963 F. Supp. 7, 18 (D.D.C. 1997). Furthermore, "[i]n a negligent infliction case, there can be recovery for mental and emotional distress only if the plaintiff's injuries are 'serious and verifiable.'" *Bahura v. S.E.W. Investors*, 754 A.2d 928, 937 (D.C. 2000)(citation omitted).

Because Ms. Russell's negligence claims fail, her negligent infliction of emotional distress claims also fail. *See Wright*, 963 F. Supp. at 18 (stating negligent infliction of emotional distress claim may only proceed when there is sufficient evidence that defendant acted negligently). Additionally, under District of Columbia law, "[e]xpert testimony is necessary to demonstrate a causal link between a defendant's act and a plaintiff's harm 'in cases presenting medically complicated questions due to multiple and/or preexisting causes.'" *Halcomb v. Woods*, 610 F. Supp. 2d 77, 85 (D.D.C. 2009)(requiring expert

testimony where plaintiff's emotional distress was potentially traceable to at least three different sources and manifested itself in a variety of ways). Ms. Russell failed to provide expert testimony establishing the requisite causal link between defendants' alleged tortious conduct and her emotional distress. Absent such an expert, or evidence sufficient to show that defendants acted negligently, she cannot maintain a claim for negligent infliction of emotional distress. Accordingly, defendants' motion for summary judgment on Count Three is **GRANTED**.

    **4. Count Four: Negligent Failure to Train or Supervise**

Ms. Russell alleges that defendants failed to adequately "train, supervise and discipline its agents and employees." Compl., ECF No. 1-1 ¶ 25. She further alleges that as "a direct and proximate consequence of the customs, policies and practices [of defendants] [she] sustained injuries." *Id.* ¶ 27. Under a negligent supervision or training theory, a plaintiff must show "that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 760 (D.C. 2001). A plaintiff claiming negligent supervision "bears the burden of presenting evidence which establishes the applicable standard of

care, demonstrates that this standard has been violated, and develops a causal relationship between the violation and the harm complained of." *Tarpeh-Doe v. United States*, 28 F.3d 120, 123 (D.C. Cir. 1994)(quoting *Morrison v. MacNamara*, 407 A.2d 555, 560 (D.C. 1979)).

Ms. Russell has not provided any expert testimony that would demonstrate the applicable standard of care under these circumstances. Moreover, Ms. Russell has not provided any evidence to show that there was a causal relationship between her light flickering and her alleged injuries sustained during the fall. Similarly, Ms. Russell has not provided any evidence that would show that the defendants had "actual or constructive knowledge," that any of its employees behaved in a "dangerous or otherwise incompetent manner." *See Brown,* 782 A.2d at 760. Because the plaintiff has not identified a standard of care, presented any evidence of a deviation from that standard, presented any evidence that the District knew about this deviation, or that the deviation caused her injuries, summary judgment is warranted on this theory of liability. *See Smith v. District of Columbia*, 882 A.2d 778, 793 (D.C. 2005) (finding directed verdict on negligence claim warranted where plaintiff failed to introduce expert testimony as to the applicable standard of care). Accordingly, defendants' motion for summary judgment on Count Four is **GRANTED.**

### B. Federal Law Claims

The final two counts of Ms. Russell's complaints are brought under 42 U.S.C. § 1983 for alleged violations of her constitutional rights under a theory of municipal liability. *See* Compl., ECF No. 1-1 ¶¶ 28-36. To state a claim under 42 U.S.C. § 1983, a court must conduct a two-step inquiry. *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). First, a court must determine whether the plaintiff establishes a predicate constitutional or statutory violation. *Id.* If so, a court then determines whether the complaint alleges that a custom or policy of the municipality caused the violation. *Id.*; *see also Monell*, 436 U.S. 658, 694 (1978). Ms. Russell brings two theories of liability under Section 1983: (1) defendants failed to protect her against a violation of her constitutional rights; and (2) she was provided inadequate medical care as a result of defendants' deliberate indifference of those rights. The Court addresses each claim in turn. *See* Compl., ECF No. 1-1 ¶¶ 28-36.

#### 1. Count Five: Failure to Protect

Ms. Russell alleges that defendants knew of and acquiesced in "the substantial risk of harm to [her] by their neglect." Compl., ECF No. 1-1 ¶¶ 30-32. She further alleges that defendants "deliberate[ly] disregard[ed] . . . [her] constitutional rights [by] fail[ing] to remove the threat [to

her] welfare . . . thereby knowingly exposing [her] to physical and emotional harm." *Id.* ¶ 30.

Ms. Russell has not provided any evidence to support her claim under Section 1983. Her complaint is devoid of facts sufficient to allege a policy or custom that amounts to a "consistent" or "widespread" practice of failing adequately to supervise and protect inmates. *See Richardson v. District of Columbia*, 322 F. Supp. 3d 175, 186 (D.D.C. 2018)(stating that to hold a municipality liable under Section 1983, a plaintiff must establish that a custom or policy of the municipality caused the violation). Although it is true that the failure to train, supervise, or discipline city employees can constitute such a policy or custom if it amounts to deliberate indifference towards the constitutional rights of a plaintiff, *see Daskalea v. Dist. of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000), Ms. Russell alleges in a conclusory manner that "[t]he need for training was so obvious that failure to address it was likely to result in a constitutional violation." Compl., ECF No. 1-1 ¶ 38. She has not alleged any deficiencies with respect to the training provided to employees at CTF, or connected any such deficiencies in training with any violation of her constitutional rights. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)("Only where a municipality's failure to train its employees in a relevant respect evidences a

15

'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom" that is actionable under § 1983.").

Ms. Russell alleges only legal conclusions such as that defendants had a "deliberate disregard for the plaintiff's constitutional rights" and that defendants "callous and deliberate disregard to the plaintiff's safety and welfare" resulted in her injury. *See* Compl., ECF No. 1-1 ¶ 30–31. She has failed to provide any evidence in support of her allegations that defendants "knew of and acquiesced in the substantial risk of harm to the plaintiff"--the undisputed evidence establishes that she did not file any written grievances related to her light fixture until after she had fell. SOF, ECF No. 64-1 ¶ 37. Because Ms. Russell has failed to support her claim with any evidence, or to dispute any of the evidence provided by the defendants, the defendants' motion for summary judgment on Count Five is **GRANTED.**

### 2. Count Six: Inadequate Medical Care

Ms. Russell alleges that defendants should have known of the excessive risk of leaving her in a dark and dingy cell and disregarded that risk. Compl., ECF No. 1-1 ¶ 33–36. She further alleges that as a direct and proximate consequence of these failures, her "medical condition deteriorated as there was no monitor[ing] and adequate care of her medical needs." *Id.* ¶ 36.

Defendants move for summary judgment on Ms. Russell's claim on the basis that all medical services in CTF are provided by an independent contractor, Unity Health, not the defendants. Defs.' Mot. for Summ. J., ECF No. 64 at 7–8.[4] In Ms. Russell's opposition to defendants' partial motion for summary judgment, she clarified that she has not brought a claim for "defect of medical care provided or medical malpractice" but rather her "allegations are that she was denied care by the defendants, due to their indifference." Pl.'s Opp'n to Mot. for Partial Summ. J., ECF No. 19 at 3. Ms. Russell contended that the District's policies barred her from receiving any medical treatment, and that if there exists a factual dispute as to whether she received treatment then summary judgment is inappropriate. *Id.* at 3–4.

Ms. Russell's arguments fail for several reasons. First, there is no factual dispute as to whether Ms. Russell received medical care after she was injured. Ms. Russell's answers to the District's interrogatories unequivocally show that she received treatment for her injuries. *See* Russell Interrrog., ECF No. 45-4. In her answers to her interrogatories she stated that after she fell "she [w]as treated at CCA clinic, and was taken to ER,

---

[4] When citing electronic filings throughout this Memorandum Opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

but [did] not recall which." *Id.* at 5. She also stated that "[f]or mental health, [she] went to see the psychiatrist and mental care provider upstairs at the facility, [was] also seen at the DC Department of Behavioral Health, then upon release seen by [a] [t]herapist." *Id.* Furthermore, Ms. Russell's deposition testimony confirms that she had no complaints about the treatment she received, and the record shows that she saw physicians at Unity Health Care at least seven times after her fall. SOF ECF No. 64-1 ¶¶ 34–36. Accordingly, there is no genuine factual dispute as to whether she received treatment, rather, she concedes that she received both medical and mental health treatment. *See Carter*, 304 F. Supp. 2d 13 (D.D.C. 2004)(summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact.").

Second, to the extent Ms. Russell has clarified that Count Six is a claim for a violation of 42 U.S.C § 1983 due to deliberate indifference, she has failed to show either a constitutional violation or that a custom or policy exists such that the District can be liable for any such violation. *See Brown*, 514 F.3d at 1283 (stating to hold the District liable under 42 U.S.C. § 1983 a plaintiff must establish a constitutional violation and that a policy or custom of the

District caused that violation). Accordingly, defendants' motion for summary judgment on Count Six is **GRANTED**.

**IV. Conclusion**

For the foregoing reasons, the defendants' motion for summary judgment on all remaining counts in plaintiff's complaint is **GRANTED**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan
            United States District Judge
            December 18, 2019**